**STATE of Missouri, Respondent,**

v.

**Lloyd E. SCHLUP, Appellant.**

**No. WD 42178.**

Missouri Court of Appeals,
Western District.

March 13, 1990.

Melinda K. Pendergraph, Columbia, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, C.J., and SHANGLER and FENNER, JJ.

FENNER, Judge.

Appellant, Lloyd Schlup, appeals his conviction for assault in the first degree under § 565.050, RSMo 1986. After trial by jury, appellant was sentenced by the court as a persistent offender to life imprisonment.

Initially, no appeal was taken from appellant's conviction. However, appellant did file a motion for post-conviction relief under then Rule 27.26. Appellant's Rule 27.26 proceeding is reported in *Schlup v. State*, 771 S.W.2d 895 (Mo.App.1989). In *Schlup*, this court ruled that trial counsel's failure to file an appeal without appellant consenting to abandoning appeal and without counsel requesting permission from the court to withdraw, constituted ineffective assistance of counsel. Appellant's sentence was vacated and the case was remanded to the trial court for resentencing with the time for appeal commencing to run from the date of the resentencing. Appellant was resentenced to life imprisonment and this appeal followed.

■ Viewed in the light most favorable to the verdict, the evidence at trial supports appellant's conviction. On May 3, 1982, Sergeant Ellis Peoples was on duty as a corrections officer for the Missouri Department of Corrections at the Missouri State Penitentiary. At around 10:00 p.m., Sergeant Peoples saw appellant and his cellmate, Larry Wickizer, return to their cell after watching a movie. The Sergeant accompanied appellant and Wickizer to their cell and locked the door. He then proceeded to lock in the other inmates.

Later on Sergeant Peoples returned to appellant's cell and saw that it had been "torn up." Wickizer was standing at the back of the cell with a large gash across his throat. There was blood down the front of Wickizer's shirt, all over his face and hands. Appellant was standing at the front of the cell holding a homemade knife. Wickizer had suffered stab wounds to his neck, back and arm. One of the major vessels in his neck had been cut. The only injury to appellant was a small cut on his finger.

■ In his first point appellant argues that the trial court committed plain error in failing to compel certain discovery. Appellant argues that the state failed to disclose (1) reports of the blood and urine analysis of appellant, (2) medical reports of appellant's injuries and treatment, (3) the prison classification and assignment sheets for appellant and Wickizer, (4) crime scene photographs and photographs of appellant, and (5) the statement of rights given to appellant. Appellant seeks "plain error" review of these allegations as they were not addressed in his Motion for New Trial. Under the plain error standard of review, plain error affecting substantial rights may be considered on appeal, although not properly preserved for review, but only where there is a sound, substantial manifestation, a strong, clear showing, that injustice or miscarriage of justice will result if relief is not given. *State v. Wood*, 719 S.W.2d 756, 759 (Mo. banc 1986).

Appellant's claims in regard to the prejudicial effect of allegedly not being provided with the reports of his blood and urine analysis, the medical reports of his injuries and treatment, and the prison classification and assignment sheets were all raised in appellant's appeal of the denial of his post-conviction motion under then Rule 27.26. These allegations of error were argued to constitute ineffective assistance of counsel for failure of trial counsel to compel their discovery in *Schlup v. State*, 771 S.W.2d 895.

In *Schlup* this court held that appellant was not prejudiced by any alleged failure of counsel to obtain reports of blood and urine analysis that were allegedly taken from appellant. The court also held that in light of appellant's own testimony about the minor nature of the injuries he suffered that he was not prejudiced by counsel not obtaining the medical reports of appellant's

injuries and treatment. In regard to the jail classification and assignment sheets, the court held that there was no prejudice to appellant.

A defendant is precluded from transforming alleged trial errors in the direct appeal into claims of ineffective assistance of counsel in a post-conviction proceeding. *O'Neal v. State,* 766 S.W.2d 91, 92 (Mo. banc 1989). A post-conviction proceeding cannot be used as a vehicle for a second appellate review and issues decided in the direct appeal cannot be relitigated in a post-conviction proceeding. *Id.* Additionally, in *Sidebottom v. State,* 781 S.W.2d 791 (Mo. banc 1989), citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Missouri Supreme Court ruled that if a request for plain error relief on an issue is denied on direct appeal, that "the bases for the Court's finding of no manifest injustice on direct appeal serve now to establish a finding of no prejudice under the Strickland test" that is applied to ineffective assistance of counsel claims. Conversely, a court's finding of no prejudice on a given issue under the *Strickland* test precludes a finding of manifest injustice on the same issue.

Appellant's allegations of error for allegedly not being provided the reports on his blood and urine analysis, the medical reports of his injuries and treatment, and the prison classification and assignment sheets were decided against appellant in *Schlup v. State,* 771 S.W.2d 895. The holding of this court in regard to these issues in *Schlup* precludes finding of manifest injustice.

Appellant's allegations of error for not being provided the photographs of the crime scene, photographs of himself and the statement of rights that he was given, were not addressed in his post-conviction proceeding.

The basic object of discovery is to afford the defense fair opportunity to avoid surprise and prepare for trial. *State v. Sykes,* 628 S.W.2d 653, 656 (Mo. banc 1982). Thus, the prosecution must disclose evidence favorable to the accused where the evidence is material either to the defendant's guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). In *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985), the United States Supreme Court stated that a constitutional error occurs in the failure of the state to disclose evidence "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." In defining materiality, the United States Supreme Court adopted the *Strickland* test as set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The evidence is material only if there is reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *United States v. Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383. Furthermore, it is the defendant's burden to show that the evidence is material and exculpatory. *State v. Chaney,* 663 S.W.2d 279, 285 (Mo. App.1983).

Appellant has failed to show a reasonable probability that discovery of the photographs and statement of rights would have altered the result of the proceeding. The record does not support a finding of manifest injustice. Appellant's allegations of plain error for not being provided the photographs and the statement of rights are denied.

Appellant next argues that the trial court plainly erred in not declaring a mistrial *sua sponte,* when the prosecutor asked appellant, on cross-examination, whether his prior assault and sodomy convictions illustrated his character of being violent and a homosexual.

Appellant did not object to the cross-examination of which he now complains and he made no claim of error in this regard in his motion for new trial. Thus, appellant's claim is once again subject only to plain error review.

A trial court is vested with broad discretion in determining the extent of cross-examination. *State v. Taylor*, 745 S.W.2d 173, 175 (Mo.App.1987). When a defendant elects to testify in his own defense, he may be cross-examined in detail as to any matter generally referred to in his direct examination. *State v. Foulk*, 725 S.W.2d 56, 70 (Mo.App.1987). Thus, a defendant cannot complain about the state's inquiring about matters first brought into the case by the defendant. *State v. Jordan*, 646 S.W.2d 747, 750 (Mo. banc 1983).

Where an accused tenders the factual issue of bad character of the victim to substantiate his plea of self-defense, he thereby extends the scope of the inquiry beyond the res gestae and opens up for inquiry all evidence of like quality having probative value on the merits of said ultimate factual issue. *State v. Robinson*, 344 Mo. 1094, 130 S.W.2d 530, 532 (1939). Where the defendant places the victim's reputation as a violent and turbulent man before the jury, he also places his own. *State v. Hill*, 614 S.W.2d 744, 752 (Mo.App. 1981).

Appellant took the stand in his own behalf at trial. Appellant testified that he previously had trouble with Wickizer; that Wickizer had made homosexual "passes" at appellant; that the two had fought each other before the May 3rd incident and in the fight Wickizer hit appellant, knocked him to the floor, choked him, beat him with a picture frame and threatened to kill him. Appellant testified that he did not report the incident because he feared for his life. Appellant testified that on May 3rd, Wickizer attacked him with a knife, the two wrestled and appellant got possession of the knife; he stabbed Wickizer in the neck; that appellant and Wickizer had plenty of "push and shove" arguments in the past; and that Wickizer told appellant he might as well get used to doing homosexual acts. Appellant characterized Wickizer as a belligerent and forceful person.

The cross-examination of which appellant now complains was as follows:

Q. Mr. Schlup, you have, in your testimony, characterized or cast the character of Mr. Wickizer to be that of a violent, aggressive person; is that correct?

A. That's right.

Q. In fact you, yourself, in your life have shared those same tendencies, have you not, of violence?

A. Somewhat, yes, I have.

Q. You're serving sentences at the present time totaling 14 years, correct?

A. That's right.

Q. And those sentences are for sodomy, in two counts?

A. Right.

Q. And for assault in the second degree?

A. Right.

Q. And in fact you, yourself, as exemplified in those convictions, have exhibited the same type of character that you have described Wickizer as having, correct?

A. That's right, to a certain extent.

\* \* \* \* \* \*

Q. —and you decided that the way to handle your problems with Mr. Wickizer was to do the only thing you knew in the prison you could do, and that's get him before he got you? Isn't that the truth of what happened?

A. No, that's not the truth.

Q. In fact,—

A. I never knew that man would do anything like that. I never figured in a day—that man's got a wife and is always crying about getting out and being with his wife. He wants out of the penitentiary. I never had no idea that man would do anything like that.

Q. Like what?

A. Like come at me with a knife, threaten my life.

Q. I thought there was previous testimony that he had already done that to you?

A. I had no idea this man would actually—this guy runs around with ball

bats, going to threaten somebody. You know, he done time down in the basement for hitting a guy with a ball bat in the head. He's been locked up for suspicion of rapes. This guy has never been prosecuted for nothing. But believe me, he's raped people in there. Got a guy in check-in right now, too. Saturday he checked a kid in protective custody. What he did to that guy, I don't know. But I know he rang check-in two days ago, Saturday.

Q. Mr. Schlup, when you bring his character into issue and you say he's done those things, in fact, you've done exactly the same thing, haven't you?

A. I've been through it, yes, I have.

Q. I don't mean being the victim.

A. That's what I'm talking about. Yes, I've been there.

Q. You've done exactly the same thing he's done?

A. Yes.

Appellant opened the door to the prosecutor's cross-examination by referring to Wickizer's character during direct examination to bolster appellant's self-defense theory. By bringing in Wickizer's alleged bad character, appellant extended the scope of the prosecutor's cross-examination to include appellant's own character. Appellant has not shown plain error in relation to the prosecutor's cross-examination.

Appellant's final argument is that the trial court plainly erred in not declaring a mistrial sua sponte during the prosecutor's closing argument. Appellant represents that (1) the prosecutor argued appellant's prior convictions to show appellant's bad character and propensity for violence, (2) engaged in person vouching, (3) used degrading epithets and (4) told the jury that the burden shifted to appellant in this circumstantial case.

Appellant acknowledges that no objections were made to these arguments and they were not included in his motion for new trial. Appellant again seeks plain error review.

Relief should rarely be granted on an assertion of plain error to matters contained in arguments because trial strategy looms as an important consideration and such assertions are generally denied without explication. *State v. Wood*, 719 S.W.2d at 759. In the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such interference. *State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo. banc 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). A claim of plain error alleging errors committed in closing arguments does not justify relief on appeal unless determined to have a decisive effect on the jury. *Id.* at 920.

### Appellant's Prior Convictions

Appellant complains that the prosecutor argued appellant's prior convictions to establish bad character and appellant's propensity to commit the assault against Wickizer. The prosecutor made the following argument at trial:

"Think about, when you're back there, what we're talking about. We're talking about a blow in the back. We're talking about a stab in the neck and a jerk back on the neck. Because, folks, as hard as that is, as far from the average life of every one of you ladies and gentlemen, that is what we're talking about in this case.

And it's easy to forget, amongst all the other issues that have been raised, that that's really why we're here today.

Don't be misled by some of the issues that have come up. And one of them, I submit to you, is the character of Larry Wickizer. I'm going to be the last person in the world to defend the character of Larry Wickizer. As far as I'm concerned, he is right where he ought to be, locked up in the maximum security prison, the only maximum security facility our state has to offer. And I hope he stays there from now on. I'm not here to defend his character.

But the reason that's an issue that is misleading is because you've got to keep in mind, when that issue is raised, that this defendant, this twice-convicted sodomist, two other convictions for assault in the second degree, is serving a sentence for exactly the same crime, under similar circumstances, as he wants to suggest that Larry Wickizer was trying to put him into.

So the character is a relative thing. To say that Larry Wickizer is violent and domineering: true. But that's a misdirected issue because it doesn't really address the fact of what happened. Because this defendant, whatever he may look like here in that courtroom, we know is capable and in fact has done and been convicted of the very same thing. That's why I say don't be misled by that issue. Because one is as violent and has a history of as much the same kind of violence and domineering tendency as the other.

And I say to you that this homosexual issue, while I do believe underlies what actually happened, is really an attempt and is really something that smokescreens the real issue."

The trial court possesses the best coign of vantage to assess the prejudicial effect of the prosecutor's remarks. *State v. Wren,* 643 S.W.2d 800, 802 (Mo.1983). Unless the trial court's discretion is clearly abused to the prejudice of the defendant, the court's rulings on closing argument will not be disturbed on appeal. *State v. Davis,* 653 S.W.2d 167, 176 (Mo. banc 1983).

Once again, the appellant tendered the factual issue of the bad character of the victim to substantiate his plea of self-defense. The prosecutor's argument was supported by the evidence and invited by the appellant.

Appellant's claim of plain error for the trial court failing to sua sponte declare a mistrial because of the prosecutor's reference to his prior convictions in closing argument is denied.

*Personal Vouching*

Appellant argues that the prosecutor interjected his personal opinions and implied that he had special knowledge outside of the evidence. In this regard, appellant complains about the following statements made by the prosecutor during closing argument:

"And I may get back to it later, but inmate witnesses, in my experience, have the idea that simply a trial process is a question of scale. If we can stack enough witnesses on our side against the pure number of State's witnesses on the other, so that we balance the weight of the witnesses, the number of witnesses toward our side, that means we can beat every case."

\*　\*　\*　\*　\*　\*

"Don't be misled by some of the issues that have come up. And one of them, I submit to you, is the character of Larry Wickizer. I'm going to be the last person in the world to defend the character of Larry Wickizer. As far as I'm concerned, he is right where he ought to be, locked up in the maximum security prison, the only maximum security facility our state has to offer. And I hope he stays there from now on. I'm not here to defend his character."

\*　\*　\*　\*　\*　\*

"And I say to you that this homosexual issue, while I do believe underlies what actually happened, is really an attempt and is really something that smokescreens the real issue."

\*　\*　\*　\*　\*　\*

"Now, I don't doubt for a minute that what we have in the prison sense was a lover's fight here. The defendant didn't say that. But you've got to use your God given common sense to understand or get some impression of why what happened did happen."

\*　\*　\*　\*　\*　\*

"I submit to you, Sergeant Peoples, though not a professional witness, certainly not a person who practices coming to court, was as honest as you'll find them, and is as responsible as you'll find

them; doing his job; making the rounds like he's supposed to do."

\* \* \* \* \* \*

"Now, there's no way in any criminal case, I think, the ones that I've ever seen, that you can prove anything conclusively."

\* \* \* \* \* \*

"Now, I don't want to tell you—you know, I've talked to Mr. Schlup over the months with his lawyer here with him. And I'm not saying I don't have some pity for him, for his family. Somewhere in the background he made a decision to start down a road which caused him to end up where he is housed in the Missouri State Penitentiary.

But don't get me wrong when I say that I have that pity and some understanding for the circumstances. I still don't think he should be anywhere else. The crimes he's committed justified putting him in the Missouri State Penitentiary. That's not really the issue."

■ Arguments by the prosecutor referring to facts not before the jury may be permissible so long as they do not imply special knowledge of the prosecutor pointing to the guilt of the defendant. *State v. Jackson,* 768 S.W.2d 614, 616 (Mo.App. 1989).

■ None of the comments of which appellant complains imply that the prosecutor possessed special knowledge pointing to appellant's guilt. There was no objection to any of the prosecutor's statements at trial and they do not constitute plain error.

Appellant's claim of improper personal vouching is denied.

### Personal Epithets

■ Appellant argues that the prosecutor used degrading epithets which injected passion into the jury's deliberations. Appellant specifically complains about the following statements:

"Now, I'm going to insert something here because I can't really address this without it. You heard Randy Cleveland—bless his cold-blooded heart—testify that he was just around the corner and heard Mr. Schlup say to the guard, "I don't want to go in that cell." Well, Randy Cleveland, ladies and gentlemen, is the most despicable liar you'll ever want to see. And if you all want to consider believing his testimony, the People are in trouble."

\* \* \* \* \* \*

"Now, some of them didn't raise their right hand at all and some of them raised a finger. But what they say is I promise to tell the truth so help me God.

And that presupposes, number one, they believe in God, which you can pitch out the window, considering their background; and, number two, that a promise means something to them." [1]

■ Once again, appellant did not object to the argument of which he now complains and made no claim of error in this regard in his motion for new trial. *State v. Driscoll,* 711 S.W.2d 512, 515 (Mo. banc 1986), cert. denied 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986).

Furthermore, appellant argued the impropriety of the same alleged personal epithets in the prosecutor's closing argument, in his request for relief under Rule 27.26. In *Schlup v. State,* 711 S.W.2d 895, this court held that even assuming arguendo that these remarks were improper they did not deprive appellant of a fair trial. *Schlup v. State,* 771 S.W.2d at 900. This holding is binding on appellant and precludes a finding of manifest injustice. See, *Sidebottom v. State,* 781 S.W.2d at 796, 798; See, *O'Neal v. State,* 766 S.W.2d at 92.

Appellant's argument that the prosecutor engaged in improper personal epithets is denied.

---

**1.** It is noted that the comments of the prosecutor, while not grounds for plain error, are not condoned by this court.

*Shifting The Burden Of Proof*

█ Appellant's final argument is that the prosecutor misstated the law when he made the following statement:

"Now, that is a circumstantial bit of evidence which the Court tells you to consider with all the facts. You cannot explain it any other way except that it didn't happen the say [sic] he said it happened."

Appellant argues that the prosecutor shifted the burden of proof to the appellant to introduce each and every possible hypothesis of innocence before it could be considered by the jury. Once again, review is for plain error and the record does not support a finding of manifest injustice. Appellant's argument that the prosecutor improperly shifted the burden of proof is denied.

The judgment of the trial court is affirmed.

All concur.