**STATE of Missouri, Respondent,**

v.

**Jerry D. GILPIN, Appellant.**

**Nos. WD 50358, WD 53319.**

Missouri Court of Appeals,
Western District.

Sept. 30, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 28, 1997.

Application to Transfer Denied
Nov. 25, 1997.

---

**22.** Defendant cites to Mo. Const., art. I, §§ 1, 10   & 18(a).

Douglas P. Wilson, Platte City, for Appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

Before EDWIN H. SMITH, P.J., and BERREY and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

Jerry D. Gilpin was convicted on October 6, 1994, by a jury in the Circuit Court of Cooper County of assault in the first degree, § 565.050[1], and armed criminal action, § 571.015. On November 14, 1994, he was sentenced to consecutive terms of seventeen and three years imprisonment, respectively. Appellant appeals the judgment of convictions and sentences and the order denying his Rule 29.15 motion. His appeals have been consolidated pursuant to Rule 29.15($l$).

On appeal, appellant raises eight points. The first six deal with the denial of his Rule 29.15 motion, wherein he claims ineffective assistance of counsel. The remaining two points concern his direct appeal. In his first six points, appellant claims that he received ineffective assistance of counsel in that his trial counsel: (1) failed to properly prepare his case for trial; (2) improvidently stipulated that certain illegal substances found on the victim would not be presented at trial; (3) failed to impeach the victim; (4) failed to call certain witnesses concerning the victim's alleged acts of and reputation for violence; (5) failed to present evidence regarding his medical conditions; (6) failed to properly investigate allegations and information concerning juror misconduct. In his direct appeal, appellant claims in Point VII that there was insufficient evidence to convict him of assault in that the evidence demonstrated he was acting in self-defense. Likewise, in Point VIII, appellant claims that there was insufficient evidence to convict him of armed criminal action in that the evidence demonstrated he was acting in self-defense.

We affirm.

---

1. All *statutory references are to RSMo 1994,* unless otherwise indicated.

### Facts

On February 3, 1994, Gary Henke went to appellant's residence in Marshall, Missouri, because Melissa Miller, Henke's fiancée, had been there the prior night and had yet to return home. Henke arrived at the appellant's home around five or six a.m. and stayed approximately three hours while talking and drinking beer. Henke had no problems with the appellant and went home for awhile. Henke later returned to appellant's house in the middle of the afternoon to speak to Miller. Again, Henke had no problems with the appellant.

Henke continued to drink throughout the afternoon. Early in the evening, he and two friends, Vickie Agapeau and Ed Garner, drove to the appellant's residence. Henke went inside and asked Miller whether she was going to come with them. They argued and she refused to accompany him.

About one hour later, Henke returned to appellant's house to see whether Miller was ready to leave with him. Appellant told Henke that Miller was no longer there, but had left with her sister. After appellant informed him that Miller was no longer at the house, he started to leave. Henke testified that at this time appellant began slashing him with a carpet or utility knife. Henke testified that he turned to get away, but that appellant kept grabbing him.

The knife cut Henke's throat from ear to ear, transecting his voice box so completely that one could see his vocal cords and the lower portion of his voice box. It also caused a partial transection of his external jugular vein. Henke also received a deep laceration to his ear, which was partly transected, narrowly missing the carotid artery; a vertical laceration to his face, which just missed his left eye; and several other slash wounds to his left arm, back, and hip. When he finally broke free of appellant's grasp, Henke returned to Garner's truck. Garner and Agapeau drove Henke to the hospital, where he was hospitalized for seven days, five of which were in intensive care.

At trial, appellant testified that he was acting in self-defense when he cut Henke. He also testified that he was fearful of being struck because he was disabled in a car accident as a result of a spinal fusion in his neck and damaged nerves in his arms and hands. Appellant testified that when Henke returned to his house in the early evening of February 3rd, Henke argued with Miller, knocked her off a bench, and dragged her across the floor. According to appellant, Henke threatened to kill him. Appellant testified that when he went to pick up his telephone, Miller told Henke that appellant was calling the police. Henke then grabbed the telephone, threw it on the floor and pushed appellant into a wall. Once Henke left, Miller called her sister to come and get her. Appellant testified that he telephoned Henke's father and informed him that Henke had damaged his home and had threatened to kill him. He also testified that he told Henke's father that if Henke returned, he would have to "take care of it [him]self." Appellant further testified that he was frightened because he had heard that Henke was a troublemaker and had been involved in several fights with Miller.

Appellant testified that he was on the telephone with his mother around 7 p.m. when Garner's truck pulled up outside. Appellant told his mother that Henke had returned and to call 911. He said he went to his front door in an effort to keep Henke from entering his home. Appellant told Henke that Miller was no longer at the house. According to the appellant, Henke did not believe appellant and appellant stated that Henke pulled open the door, forced his way into the house, swinging his fists. Appellant said that Henke then struck him in the jaw.

Appellant also testified that as Henke continued to swing at him, appellant saw a carpet knife lying on top of a room divider, which he used to cut carpet. He testified he opened the knife and began slashing Henke on his back to get him off of him. Appellant stated he feared that someone would easily paralyze him, because of his pre-existing spinal injury. Henke continued punching appellant. Appellant started slashing at the front of Henke. Appellant stated he finally escaped Henke's grasp and Henke left his home. Appellant testified he then called the

police and told them that he had been assaulted and needed help.

On March 24, 1994, the State charged appellant by indictment in the Circuit Court of Saline County with one count of assault in the first degree and one count of armed criminal action. The jury returned verdicts of guilty on both counts on October 6, 1994. On November 14, 1994, he was sentenced to consecutive terms of seventeen and three years imprisonment, respectively.

On August 23, 1995, appellant filed a Rule 29.15 motion for postconviction relief alleging three grounds of ineffective assistance of counsel: (1) movant's attorney failed to adequately prepare his case for trial; (2) movant's attorney failed to call requested defense witnesses that would have testified to the victim's prior acts of and reputation for violence; and, (3) movant's counsel failed to cross examine the victim as to his prior acts of violence, inconsistent statements, and motive to lie. On June 27, 1996, appellant filed a motion for leave to file an amended Rule 29.15 motion. The amended motion, which included ten additional grounds of ineffective assistance of counsel not raised in appellant's original motion, was filed on the following day.

On June 28, 1996, an evidentiary hearing was held on appellant's Rule 29.15 motion. On August 5, 1996, the motion court entered its findings of fact and conclusions of law denying appellant's motion. This consolidated appeal follows.

### Rule 29.15 Appeal

#### Standard of Review

■ Appellate review of the motion court's denial of postconviction relief motion is not a *de novo* review; rather, the findings of fact and conclusions of law of the motion court are presumptively correct. *Wilson v. State,* 813 S.W.2d 833, 835 (Mo. banc 1991). Appellate review of a motion court's actions is limited to a determination of whether its findings and conclusions are clearly erroneous. Rule 29.15; *State v. Driver,* 912 S.W.2d 52, 54 (Mo. banc 1995). Findings and conclusions are deemed clearly erroneous only if, after reviewing the entire record, we are left

with the definite and firm impression that a mistake has been made. *Wilson,* 813 S.W.2d at 835.

### Discussion

#### I.

In his first point, appellant claims that he received ineffective assistance of counsel in that his trial counsel failed to properly prepare his case for trial by: (A) not obtaining and serving subpoenas of necessary witnesses concerning the victim's alleged prior acts of and reputation for violence; (B) not investigating and ascertaining the victim's alleged prior acts of and reputation for violence; and, (C) not investigating a certain fact witness. In Point IV, appellant claims his trial counsel was ineffective for failing to call certain witnesses to testify concerning the victim's alleged prior acts of and reputation for violence. Since appellant's claim in Point IV is essentially the same as that raised in his Point I(B), we will discuss them together.

■ To prove ineffective assistance of counsel, the movant must show that: (1) trial counsel did not demonstrate the customary skill and diligence that a reasonably competent attorney would display rendering similar services under the existing circumstances; and that (2) he or she was prejudiced by such conduct or lack thereof. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, the movant must show a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. *State v. Harris,* 870 S.W.2d 798, 814 (Mo. banc 1994), *cert. denied,* 513 U.S. 953, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994).

> Movant faces a heavy burden in establishing a claim for ineffective assistance of counsel. Not only must the defendant prove his or her allegations by a preponderance of the evidence, but the defendant must overcome the court's presumption that counsel is competent.

*Yoakum v. State,* 849 S.W.2d 685, 687 (Mo. App.1993) (citations omitted). Reasonable trial strategy will not support an ineffective

assistance of counsel claim. *Harris,* 870 S.W.2d at 814.

## A. Failure to Obtain and Serve Subpoenas on

### Necessary Witnesses

■ Appellant contends that his trial counsel was ineffective because he failed to subpoena witnesses that would have testified concerning the victim's alleged prior acts of and reputation for violence; and if the jury would have heard such testimony, it would have believed he was acting in self-defense. Although we agree that where justification is an issue in a criminal case, Missouri courts permit testimony regarding the victim's prior acts of and reputation for violence, *State v. Waller,* 816 S.W.2d 212, 216 (Mo. banc 1991), we disagree that appellant's trial counsel was ineffective as alleged.

■ "The selection of witnesses for trial is a matter of trial strategy...." *State v. Maddix,* 935 S.W.2d 666, 672 (Mo.App.1996) (citing *State v. Pounders,* 913 S.W.2d 904, 908 (Mo.App.1996)). "The decision not to call a witness is, as a matter of trial strategy, virtually unchallengeable." *Id.* For the movant to establish that his trial counsel was ineffective for failure to call a witness, he must show that the decision "involved something other than reasonable trial strategy; that the witness could have been located through reasonable investigation; that the witness would have testified; and that the witness' testimony would have provided the defendant with a viable defense." *Maddix,* 935 S.W.2d at 672; *State v. Johnson,* 901 S.W.2d 60, 61 (Mo. banc 1995) (citing *Leisure v. State,* 828 S.W.2d 872, 875 (Mo. banc 1992), *cert. denied,* 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d, 259 (1992)).

■ Trial counsel's decision not to call a witness is presumed to be trial strategy and will not constitute ineffective assistance of counsel unless the appellant clearly establishes otherwise. *State v. Brown,* 937 S.W.2d 233, 236 (Mo.App.1996); *State v. Clark,* 925 S.W.2d 872, 878 (Mo.App.1996). When an attorney chooses not to call a particular witness because the attorney fears that the testimony would harm his client's case, his choice not to call the witness is a proper strategic and tactical decision that will not support a claim of ineffective assistance of counsel. *State v. Williams,* 853 S.W.2d 371, 377 (Mo.App.1993); *State v. Borders,* 844 S.W.2d 49, 55 (Mo.App.1992), *cert. denied,* 509 U.S. 908, 113 S.Ct. 3006, 125 L.Ed.2d 698 (1993).

■ The record here supports the motion court's finding that appellant's trial counsel's failure to call certain witnesses who would have testified regarding the victim's alleged prior acts of and reputation for violence did not constitute ineffective assistance of counsel. In this respect, appellant's trial counsel testified at the evidentiary hearing that he did not want the witnesses in question to testify regarding the victim's prior acts of and reputation for violence because of his concern that this would open the door for the State to introduce evidence of appellant's violent character. This was a valid concern, in that it is well settled in the law that when the accused raises the issue of the victim's reputation for violence, he also raises his own. *State v. Schlup,* 785 S.W.2d 796 (Mo. App.1990); *State v. Hill,* 614 S.W.2d 744 (Mo.App.1981); *State v. Page,* 577 S.W.2d 177 (Mo.App.1979).

Appellant's trial counsel testified that he weighed the benefit of having the witnesses in question testify regarding the victim's alleged violent nature against the potential harm that would result from opening the door for the State to introduce evidence of the appellant's propensity for violence. In weighing the potential harm that could result from the State's evidence regarding his client's propensity for violence, appellant's trial counsel testified that he knew of his client's criminal record. He also testified that he knew appellant had previously lashed out at a judge in a court proceeding and had prior uncharged bad acts. Thus, appellant's trial counsel justifiably feared that if he called the witnesses in question to testify regarding the victim's violent nature, his client's case would be harmed more than it would benefit since doing so would open the door for the State to introduce evidence of appellant's propensity for violence. Thus, his choice not to call witnesses who he believed

would cause more harm than good to appellant's case, was sound trial strategy which did not constitute ineffective assistance of counsel, *Brown,* 937 S.W.2d at 236; and the motion court's finding that appellant's trial counsel was not ineffective for failing to call witnesses, who would have testified regarding the victim's alleged prior acts of and reputation for violence, was not clearly erroneous.

### B. Failure to Investigate the Victim's Alleged Prior Acts of Violence

Appellant claims that his counsel failed to adequately investigate the victim's alleged prior acts of violence and call witnesses who would testify regarding these acts and the victim's reputation for violence, which testimony would support his claim of self-defense. Appellant makes the same complaint in his Point IV.

To succeed on an ineffective assistance of counsel claim based on inadequate investigation, movant must specifically describe the information the attorney failed to discover, allege that a reasonable investigation would have resulted in the discovery of such information and prove that the information would have aided or improved movant's position.

*Yoakum,* 849 S.W.2d at 688. The record here supports the motion court's finding that trial counsel did not fail to adequately investigate the victim's prior acts of violence. As stated, *supra,* appellant's trial counsel testified that he did investigate the victim's reputation for violent behavior and discovered that he did not have such a reputation. Counsel also testified that he investigated his client's propensity for violence and that his client had a criminal record, had previously lashed out at a judge, and had prior uncharged bad acts. Counsel weighed the propensities of the victim and appellant for violence and wisely decided that his client's was worse than the victim's. Thus, as discussed, *supra,* trial counsel did not want to offer evidence of the victim's alleged propensity for violence for fear the State would retaliate by presenting evidence of the appellant's propensity for violence. Trial counsel's decision not to call witnesses regarding the victim's

alleged propensity for violence constituted reasonable trial strategy and not ineffective assistance of counsel. *Brown,* 937 S.W.2d at 236.

The motion court was entitled to make determinations of credibility. *Dehn v. State,* 895 S.W.2d 55, 58 (Mo.App.1995). Obviously, it found appellant's trial counsel's testimony that he investigated the victim's alleged prior acts of and reputation for violence to be credible. Thus, we hold that the record conclusively demonstrates that the motion court's finding that appellant's counsel did not fail to render effective assistance of counsel by failing to investigate the victim's alleged prior acts of violence was not clearly erroneous.

### C. Failure to Interview and Obtain the Testimony of Fact Witness Mary Alexander

In his third claim of ineffective assistance of counsel under Point I, appellant claims that his trial counsel failed to interview and obtain the testimony of a fact witness, Mary Alexander, who would have testified that she saw the victim at the appellant's home earlier in the day and heard appellant tell the victim to leave his home. Appellant argues that this testimony would have corroborated his contention that he was acting in self-defense when he cut the victim with a knife.

Failure to call a witness that counsel did not know existed is not considered ineffective assistance of counsel. *State v. Howard,* 896 S.W.2d 471, 490 (Mo.App. 1995). Here, the motion court found that appellant's trial counsel was not ineffective because appellant did not provide his counsel with the name of Mary Alexander prior to trial, and that in any event her testimony would have been cumulative to that of other witnesses who did testify for appellant. The motion court is entitled to make determinations of credibility. *Dehn,* 895 S.W.2d at 58. The motion court was entitled to believe appellant's trial counsel's testimony that he was not provided the name of Mary Alexander prior to trial. Thus, its finding that appellant's trial counsel was not ineffective for

failing to call Mary Alexander as a witness was not clearly erroneous.

Points I and IV are denied.

## II.

Appellant claims in Points II, III, V, and VI that his trial counsel was ineffective because he: (II) improvidently stipulated that evidence of illegal substances found on the victim's person would not be presented at trial; (III) failed to properly impeach the victim regarding his alleged prior acts of violence; (V) failed to present evidence regarding the appellant's medical conditions; and, (VI) failed to investigate allegations and information concerning juror misconduct. These claims were not raised in appellant's original motion, but only in his amended motion. The State argues that the amended motion was out of time; and therefore, the claims raised in the amended motion were barred. We agree.

■■■ With respect to the timeliness of an amended motion, Rule 29.15(f) (1995) provides in pertinent part that:

[a]ny amended motion shall be verified by movant and shall be filed within thirty days of the date counsel is appointed or the entry of appearance by counsel that is not appointed. The court may extend the time for filing the amended motion for one additional period not to exceed thirty days.

The thirty days in Rule 29.15(f) has been construed to begin running from "the earliest date that motion counsel had been appointed or has made an appearance and there exists a trial transcript properly filed with the appellate court." *Baugh v. State*, 870 S.W.2d 485, 489 (Mo.App.1994) (citing *State v. White*, 798 S.W.2d 694, 696 (Mo. banc 1990); *State v. Shaw*, 839 S.W.2d 30, 37 (Mo.App.1992)). The court may extend the original thirty day filing time by an additional period of thirty days, making sixty days the maximum period within which an amended motion may be filed. *State v. Fuller*, 880 S.W.2d 589, 596 (Mo.App.1994) (citing *State v. Ervin*, 835 S.W.2d 905, 929 (Mo. banc 1992), *cert. denied*, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993)). "Time limits governing post[ ]conviction motions are considered mandatory

and reasonable." *Fuller*, 880 S.W.2d at 596. The untimeliness of an amended "motion acts as a complete bar to consideration by this court of the allegations contained in the motion." *Id.*

■■■ Here, appellant's original Rule 29.15 motion was timely filed on August 23, 1995. It was not a *pro se* motion, but was filed by appellant's privately retained counsel. This motion included only three grounds of ineffective assistance of counsel, which did not include the additional allegations concerning counsel's failure to provide effective counsel, as set forth in appellant's Points II, III, V, and VI. During the original thirty days, appellant did not seek a thirty-day extension to file an amended motion. Therefore, any amended motion must have been filed on or before September 22, 1995, to be timely. Since appellant's amended motion was filed on June 27, 1996, more than ten months after appellant filed his original Rule 29.15 motion, it was filed out of time and was barred, depriving the motion court of jurisdiction to hear or rule the additional claims. *Id.* Thus, we must dismiss appellant's appeal as to the claims raised in these points. *Baugh*, 870 S.W.2d at 489.

■■■ Even though the State waived objection to the timeliness of the amended motion, and the motion court mistakenly believed it could, at its discretion, hear the claims raised for the first time in the out-of-time amended motion, the motion court had no such discretion, *State v. Isaiah*, 874 S.W.2d 429, 435 (Mo.App.1994), unless "abandonment of counsel" applied. *Luleff v. State*, 807 S.W.2d 495, 498 (Mo. banc 1991); *Sanders v. State*, 807 S.W.2d 493, 495 (Mo. banc 1991). Although the issue was not raised by appellant in his brief, because his amended motion was filed approximately nine months out of time, the issue of abandonment of counsel might appear to be implicated. We find on closer review it is not.

■■■ A valid claim of "abandonment of counsel" allows the motion court to permit the filing of an untimely, amended postconviction relief motion. *Luleff*, 807 S.W.2d at 498; *Sanders*, 807 S.W.2d at 495. The genesis of "abandonment of counsel" as it pertains to motions for postconviction relief stems from answering the question of how to ad-

dress the failure of appointed postconviction counsel to conduct the review compelled by Rules 24.035(e) and 29.15(e), which, *inter alia*, require appointed counsel to determine whether all of the facts supporting the claims and all possible claims have been raised in an original postconviction relief motion. To fulfill this requirement, the Missouri Supreme Court has set forth the following procedure:

> At such time as counsel may seek leave to file pleadings out of time, the motion shall set forth facts, not conclusions, showing justification for untimeliness. Where insufficiently informed, the court is directed to make independent inquiry as to the cause of the untimely filing. The burden shall be on the movant to demonstrate that the untimeliness is not the result of negligence or intentional conduct of the movant, but is due to counsel's failure to comply with *Rule 29.15(f)*. If the court determines that the untimeliness resulted from negligence or intentional conduct of movant, the court shall not permit the filing. Should the failure to file a timely amended motion result from inattention of counsel, the court shall permit the filing.

*Sanders*, 807 S.W.2d at 495. Thus, by its terms, a claim of abandonment of counsel only arises when the original motion was filed *pro se* and postconviction counsel is appointed to review it as required by Rules 29.15(e) and 24.035(e). Such circumstances do not exist here since privately retained counsel drafted the original motion. Therefore, the review required of appointed postconviction counsel by Rules 24.035(e) and 29.15(e), when the original motion is filed *pro se*, was not implicated or necessary here.

Because appellant's Points II, III, V, and VI deal with the additional claims of ineffective assistance of counsel raised in appellant's amended motion, which was out of time, the motion court had no jurisdiction to hear them. *Fuller*, 880 S.W.2d at 589. Thus, this court has no jurisdiction to hear the appeal of the denial of these claims. *Rohwer v. State*, 791 S.W.2d 741, 743–44 (Mo.App.1990).

### Direct Appeal

### Standard of Review

In Points VII and VIII, appellant attacks the sufficiency of the evidence to support his convictions of first-degree assault and armed criminal action, respectively. In reviewing a claim of insufficient evidence to support a criminal conviction, "appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993) (quoting *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989)). "[T]he appellate court must consider the evidence, and the inferences drawn from it, in the light most favorable to the verdict and ignore all contrary evidence and inferences." *State v. Allison*, 845 S.W.2d 642, 645 (Mo.App.1992). "[T]he Court must review the evidence adduced at trial and examine the inferences reasonably supported by that evidence to determine whether the jury's verdict is proper." *Grim*, 854 S.W.2d at 403. The jury may accept or reject any part of a witness' testimony and is not bound by a defendant's self-serving answer. *Dulany*, 781 S.W.2d at 55. The "credibility and the effects of conflicts or inconsistencies in testimony are questions for the jury." *Id.* "It is within the jury's province to believe all, some, or none of the witness' testimony in arriving at their verdict." *Id.* It is for the jury, not the appellate court, to weigh the liability and credibility of the witnesses. *Allison*, 845 S.W.2d at 645.

### III. Assault

In his direct appeal, appellant claims in Point VII that the evidence was insufficient as a matter of law to convict him of first-degree assault because the evidence supported a finding by the jury that he was acting in self-defense. We disagree.

As a preliminary matter, we note that appellant's Point VII does not comply with the Rule 30.06(d) requirement that the Point Relied On should state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous *with citations of authorities thereunder*. Appel-

lant's Point VII cites no authorities. This court is "not required to review points or arguments when they appear without citation of applicable authority." *State v. Conaway,* 912 S.W.2d 92 (Mo.App.1995). However, in criminal cases "when appellant's arguments make clear the grounds for alleged error, it is preferable to decide cases on the merits to avoid punishing appellant for the shortcomings of appellate counsel." *State v. Rehberg,* 919 S.W.2d 543, 547 (Mo.App.1996) (citing *State v. Sloan,* 756 S.W.2d 503, 505 (Mo. banc 1988)), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1174, 103 L.Ed.2d 236 (1989); *State v. Tivis,* 884 S.W.2d 28, 29 (Mo.App.1994). Thus, we will exercise our discretion and review, *ex gratia,* the claim raised in appellant's Point VII.

■ Where the evidence is conflicting on the issue of whether the defendant acted in self-defense, the issue is a fact question for the jury to determine. *State v. Albanese,* 920 S.W.2d 917, 923 (Mo.App.1996) (citing *State v. Chambers,* 671 S.W.2d 781, 783 (Mo. banc 1984)). Appellant is only entitled to acquittal as a matter of law established by self-defense when there is "undisputed and uncontradicted evidence clearly establish[ing] self-defense." *Allison,* 845 S.W.2d at 642.

■ Here, the jury was presented with conflicting evidence of whether appellant was acting in self-defense. While appellant claims that the victim struck him several times before he cut him with the carpet knife, the victim testified that he did not ever strike the appellant. It was up to the jury to resolve this conflict in the evidence and to decide whether the appellant was acting in self-defense. The only question for us to decide is whether there was sufficient evidence from which a reasonable jury could find that the appellant was not acting in self-defense and was, therefore, guilty of assault as charged. In this respect, after a careful review of the record, we find that there was sufficient evidence in that the victim testified he never struck the appellant, which the jury was free to believe.

Point denied.

## IV. Armed Criminal Action

In Point VIII, appellant claims that there was insufficient evidence to convict him of armed criminal action, because the evidence supported a finding that he was acting in self-defense. We disagree.

■ In Count II of the felony information, appellant was charged with armed criminal action under § 571.015. This section states, in pertinent part, that "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action...." § 571.015. "[A] culpable mental state is an element of the armed criminal action charge, and, pursuant to § 562.021.2, armed criminal action requires a culpable mental state of acting purposely, knowingly, or recklessly." *State v. Rowe,* 838 S.W.2d 103, 109 (Mo.App.1992) (citing *State v. Elam,* 779 S.W.2d 716, 718 (Mo.App.1989)).

■ Here, appellant argues that there was no evidence from which a reasonable juror could find that he intentionally armed himself with the utility knife to be guilty of armed criminal action. Instead, appellant argues he only armed himself in self-defense. Under the facts as discussed, *supra,* in Point VII, we find there was sufficient evidence from which a reasonable juror could find that the appellant was not acting in self-defense, but, instead, was acting with the requisite mental state to be guilty of armed criminal action.

Point denied.

## Conclusion

The judgment of convictions and sentences and the denial of appellant's Rule 29.15 motion are affirmed. As to appellant's appeal regarding his claim of ineffective assistance of counsel as alleged in Points II, III, V, and VI, we dismiss.

All concur.